UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Demetrius Whitaker,

          Petitioner,

    -vs-

Thomas Poole,
Superintendent
          Respondent.
_____

**DECISION AND ORDER**

**No. 04-CV-00022T**

## I.   Introduction

*Pro se* petitioner Demetrius Whitaker has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 17, 2000, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of one count of Rape in the First Degree (Penal Law § 130.35[3]), one count of Sodomy in the First Degree (Penal Law § 130.50[3]), one count of Sexual Abuse in the First Degree (Penal Law § 130.65[3]), one count of Endangering the Welfare of a Child (Penal Law § 260.10[1]), and one count of Assault in the Third Degree (Penal Law § 120.00[1]).

For the reasons stated below, the petition is denied.

## II.   Factual Background and Procedural History

The charges arise out of four separate incidents that occurred in August of 1998 in the City of Buffalo. Three of the incidents

involve the victim,[1] who was 10 years old at the time.  The
remaining incident involves an altercation between Petitioner and
the victim's father.[2]

On August 28, 1998, the victim was at her grandmother's home.
Trial Transcript [T.T. 68].  The Petitioner and various other
family members were also at the grandmother's home on that day.
T.T. 64-68.  Petitioner was a friend of the victim's family.  T.T.
67.  The victim's cousin asked the victim to go to his apartment to
get some hair spray.  T.T. 86, 103.  The victim agreed to do so.
T.T. 175.  Petitioner followed her to her cousin's apartment, and
when inside, told her to remove her shirt and go to the bedroom.
T.T. 176-77.  Petitioner proceeded to take off her pants and
panties.  T.T. 177.  Petitioner then took off his pants and
Petitioner and the victim went to a bed on the floor, wherein
Petitioner proceeded to insert his penis into the victim's vagina.
T.T. 178.  At Petitioner's request, the victim then turned herself
over, wherein Petitioner proceeded to insert his penis into her
anus.  T.T. 180.  Petitioner then instructed the victim to remove
her bra.  Petitioner bit the victim on her chest and proceeded to
take pictures of her with a Polaroid camera.  T.T. 182-84.  As
Petitioner was taking the pictures, the victim heard her cousin's

_____

[1]     The minor victim's name and related identifying information is
withheld from this Decision and Order.

[2]     The details of the altercation, which resulted in the assault
charge, are not discussed further, as they are not at issue in the petition
for habeas corpus relief presently before this Court.

voice in the apartment. T.T. 185. Petitioner pulled up his pants and shut the door to the bedroom while the victim put on a shirt she found in the bedroom. T.T. 186. Petitioner held the bedroom door closed, told the victim to get dressed, and not to tell anyone what happened. T.T. 186-87. The victim's cousin and the victim's brother pushed on the door, but were unable to open it. Petitioner stuck his face out of the door and indicated he and the victim were taking pictures. T.T. 111-12. The victim's cousin testified that Petitioner appeared sweaty and smelled of sweat when he stuck his head out the door, and that his clothes were disheveled when he came out of the room. T.T. 112, 115. Petitioner then showed the victim's cousin a handgun, which Petitioner indicated he was trying to sell in the area. T.T. 115-16.

Shortly after the incident, the victim returned to her grandmother's home followed by her cousin and her brother. T.T. 120-21. Her cousin indicated to the victim's family that he suspected Petitioner had raped the victim. T.T. 125. Later that same day, the victim's family called the police and the police took a statement from the victim. T.T. 202-03. Thereafter, she was taken to the hospital, where she was examined by Dr. Christina Bucci ("Bucci"). T.T. 262-63. Bucci found no trauma to the victim's vagina or anus. Richard Spencer ("Spencer"), a forensic chemist who tested evidence in the case, found that no semen was detected in the victim's vagina, anus and/or mouth. The

prosecution's expert witness, Dr. Jack Coyne ("Coyne"), testified at trial on the subject of "penetration", and that lack of trauma to the genitals does not necessarily mean sexual abuse has not occurred. T.T. 356-76.

The jury found Petitioner guilty of one count of rape, one count of sodomy, and the counts charging sexual abuse, endangering the welfare of a child, and assault. At sentencing, Petitioner moved to set aside the verdict pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.30, alleging he had been denied effective assistance of counsel. The trial court denied the motion and sentenced Petitioner as a second violent felony offender to concurrent prison terms of 25 years for rape, 25 years for sodomy, 7 years for sexual abuse, 1 year for endangering the welfare of a child, and 1 year for assault.

Petitioner subsequently moved to vacate the judgment of conviction pursuant to C.P.L. § 440.10, alleging ineffective assistance of counsel, prosecutorial misconduct, and a due process violation. The trial court denied the motion by Memorandum and Order of June 28, 2001 [Mem. and Ord. 06/28/01], and leave to appeal to the Appellate Division, Fourth Department was denied on December 6, 2001. Petitioner then appealed his judgment of conviction to the Appellate Division, Fourth Department, which unanimously affirmed Petitioner's conviction, and denied leave to appeal to the New York Court of Appeals. People v. Whitaker, 302

A.D.2d 904 (4th Dept. 2003), <u>lv. denied</u> 100 N.Y.2d 543 (N.Y. 2003). This habeas petition followed.

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not <em>dicta</em>) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S.

1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is

actually innocent of the crime for which he has been convicted."
Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v.
Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the
[independent and adequate state law ground] doctrine applies to bar
consideration on federal habeas of federal claims that have been
defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting
Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by
Second Circuit), the Second Circuit has observed that "it is not
the case 'that the procedural-bar issue must invariably be resolved
first; only that it ordinarily should be[,]'" id. (quoting Lambrix,
520 U.S. at 525 (stating that bypassing procedural questions to
reach the merits of a habeas petition is justified in rare
situations, "for example, if the [the underlying issue] are easily
resolvable against the habeas petitioner, whereas the procedural-
bar issue involved complicated issues of state law")).

## IV.  Petitioner's Claims

### 1.    Ineffective assistance of counsel

#### A.   Failure to call witnesses or move reports into evidence

Petitioner claims he was denied effective assistance of
counsel because his attorney failed to call Bucci and Spencer as
witnesses, or seek to have their respective reports admitted into
evidence. Pet. ¶22A, Exhibits [Ex.] A, D.  Petitioner raised this

claim in his C.P.L. § 440.10 motion, and it was denied by the Erie County Supreme Court pursuant to C.P.L. § 440.10(2)(b) because Petitioner's appeal was pending[3]. Mem. and Ord. 06/28/01. Petitioner, however, failed to raise the claim on direct appeal. Consequently, the claim is deemed exhausted but procedurally barred because he could have raised the issue on appeal, but did not. <u>See</u> <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2d Cir. 1991); C.P.L. § 440.10(2)(c). Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural bar. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see</u> <u>also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). In any event, this claim fails on the merits[4].

A Petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). A Petitioner must establish both that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to

---

[3]     The Erie County Supreme Court determined, pursuant to C.P.L. § 440.10(2)(b), that "sufficient facts appear in the record to permit the Appellate Division to review all of the issues set forth in this motion. Since the defendant's appeal is pending, the motion must therefore be denied."

[4]     Since the Appellate Division did not adjudicate this claim on the merits, this Court will employ a de novo analysis of this issue. <u>See</u> <u>Torres v. Berbary</u>, 340 F.3d 63, 68 (2d Cir. 2003).

obtain relief on an ineffective assistance claim. Id. at 687. A Petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). Even if a Petitioner can establish that counsel was deficient, he still must show that he was prejudiced. See Id. at 693-94.

Moreover, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987); accord, e.g., United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999); United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992). Given the inherently tactical nature of the decision not to call a particular witness, the Second Circuit generally has refrained from disturbing such choices by trial counsel. See Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983) ("We have repeatedly noted our reluctance to second-guess matters of trial strategy simply because

the chosen strategy was not successful."); accord, e.g., Pavel v. Hollins, 261 F.3d 210, 217 (2d Cir. 2001); see also United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) ("[T]he tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."); United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."), cert. denied, 538 U.S. 1021 (2003); Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Thus,"[c]omplaints of uncalled witnesses are not favored on federal habeas review.'" DeArmas v. New York, 804 F. Supp. 524, 529 (S.D.N.Y. 1992) (quoting Aponte v. Scully, 740 F. Supp. 153, 158 (E.D.N.Y. 1990)).

In this case, Petitioner's trial counsel explained, in a detailed letter to Petitioner dated June 9, 2000, why he did not move to have Bucci's report introduced into evidence or call her as a witness. Pet. ¶22A, Ex. A[5]. He indicated to Petitioner that the decision not do so was strategic in nature in that it permitted him to comment at trial on the lack of physical evidence pertaining to vaginal and anal penetration.

_____

[5]    Respondent also cites relevant portions of this letter in its Answer and Memorandum of Law.

Furthermore, Bucci's record contained a "history" section, wherein the victim specifically identified Petitioner as the perpetrator and gave a detailed description of the alleged sexual activity. These records also reinforced that the alleged activity occurred on August 28, 1998, as well as on two prior occasions[6]. This Court finds that trial counsel's decision not to call Bucci as a witness or admit her examination into evidence was reasonable and of a strategic nature given the circumstances. Accordingly, this Court finds that trial counsel provided constitutionally effective assistance on this issue.

Similarly, Petitioner contends that trial counsel should have called Spencer as a witness, or sought to have his report admitted into evidence. Petitioner argues that the findings of Spencer's examination were exculpatory in nature, and that Spencer would have testified that there was no semen detected in the victim's underpants, vagina, mouth or anus. This Court disagrees with Petitioner's characterization of Spencer's report as entirely "exculpatory" in nature, as semen was not an issue at trial and the People did not seek to contradict Spencer's findings. Assuming, *arguendo*, that trial counsel had called Spencer to testify, the jury could have still concluded that the lack of semen was due to the fact that Petitioner did not ejaculate, not necessarily that he

---

[6]     Petitioner was charged with two additional counts of rape and two additional counts of sodomy for the alleged sexual acts that occurred prior to August 28, 1999.  He was acquitted on these counts.

did not commit the criminal sexual acts with which he was charged. Thus, this Court finds trial counsel was not unreasonable in failing to have Spencer testify, or move his report into evidence, and that the outcome of the trial was not prejudiced by failing to do so.

In a related claim, Petitioner argues that counsel was ineffective in failing to interview or call an unidentified expert witness at trial. Essentially, he argues that such an expert witness would have spoken to the lack of "medical evidence" in the case, which would have called into question whether the sexual acts occurred at all. Pet. Ex. D. Petitioner raised this claim in his C.P.L. §440.10 motion and it was denied pursuant to C.P.L. § 440.10(2)(b) because his appeal was pending. Petitioner, however, failed to raise the issue on direct appeal. Therefore, the claim is deemed exhausted but procedurally barred because he could have raised it on direct appeal, but did not. See Grey, 933 F.2d at 120-21; C.P.L. § 440.10(2)(c). Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural bar. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992). In any event, the claim is without merit[7].

It is noted that, under certain circumstances involving sexual

_____

[7]     Since the Appellate Division did not adjudicate this claim on the merits, this Court will employ a de novo analysis of this issue. See Torres v. Berbary, 340 F.3d at 68.

offenses, failure to call an expert witness can be grounds for an ineffective assistance of counsel claim. <u>Lindstadt v. Keane</u>, 239 F.3d 191, 204 (2d Cir. 2001) (failure to consult an expert on sexual abuse of children grounds for ineffective assistance). In this case, however, Petitioner's counsel effectively elicited the information he claims an expert would have testified to through cross-examination, and Petitioner has failed to allege anything additional that could not have been elicited by cross-examination of Coyne. Thus, it seems entirely reasonable in this case that trial counsel failed to call an expert witness. Coyne testified that a physical examination of a sexually abused child may not reveal any detectable signs of sexual abuse. He did not testify that there were any identifying signs to the victim of a sexual assault. T.T. 356-65. In this regard, his testimony was neutral. Notably, trial counsel cross-examined the prosecution's expert witness at length, and elicited a response from the witness that, based on the lack of physical trauma to the victim's genitals, it was possible to draw the conclusion that she had not been vaginally or anally violated. T.T. 381. Therefore, this Court finds trial counsel's assistance on this issue was not ineffective, and that the failure to call an expert did not prejudice the outcome of the trial. Petitioner's claim, therefore, must be denied.

## B. Failure to object

Petitioner argues that trial counsel was ineffective because

he failed to object to the allegedly impermissible testimony of the prosecution's expert witness (Coyne). Pet. ¶22A, Ex. A. Petitioner raised this claim in his C.P.L. § 440.10 motion, and it was denied by the Erie County Supreme Court pursuant to C.P.L. § 440.10(2)(b) because the appeal was pending. Mem. and Ord. 06/28/01. Petitioner, however, failed to exhaust his state remedies with respect to this issue. On direct appeal, Petitioner argued only that Coyne testified erroneously concerning the type of sexual contact necessary to constitute rape, not that his counsel was ineffective for failing to object to this testimony[8]. In doing so, Petitioner failed to fairly apprise the Appellate Division of the federal constitutional issue[9]. See Daye, 696 F.2d at 194.

---

[8] In fact, Petitioner himself acknowledges in his Reply Brief that his attorney's failure to object is understandable. He states: "[o]ne reason why the instant case merits attention in the interest of justice is that the issue appellant raises herein, though fundamental to the issue of his guilt of first degree rape, apparently has not already been resolved by a New York court. Trial counsel cannot, therefore, be faulted for overlooking the issue." Appellant's Reply Brief, Page 8.

[9] This Court notes that the Appellate Division addressed Petitioner's argument that Coyne testified erroneously concerning the type of sexual contact necessary to constitute rape (i.e., the terms in which he articulated the claim on direct appeal). It stated "[d]efendant's contention concerning the admissibility of testimony by the People's medical expert on the subject of 'legal penetration' is not preserved for our review (see CPL 470.05[2]), and we decline to exercise our power to review that contention as a matter of justice (see 470.15[6][a]). We reject defendant's contention that the alleged error arising from the admission of that testimony need not be preserved." Mem. and Order 02/07/03. Even if this Court were to alternatively construe Petitioner's ineffective assistance of trial counsel claim as being subsumed in his claim regarding the subject matter of Coyne's testimony, the claim is still procedurally barred from habeas review because the state court's ruling rested on an adequate and independent state ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); see also Reid v. Senkowski, 961 F.2d 374 (a state procedural bar arises through a failure to make a timely appeal, or through a failure to preserve a claim of appeal through contemporaneous objection).

Consequently, he is now procedurally barred from doing so because he could have raised the issue on appeal, but did not. See Grey, 933 F.2d at 120-21; C.P.L. § 440.10(2)(c). Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural default. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992). In any event, this claim is without merit[10].

Petitioner argues that counsel was ineffective in failing to object to Coyne's allegedly improper testimony concerning what constitutes rape. On direct examination, Coyne testified as to the issue of penetration[11], and how a individual could be penetrated in the "legal sense" (as opposed to the clinical sense), yet still suffer no physical trauma to the genitals. T.T. 365. Coyne went on to explain that penetration can occur either horizontally –– when the shaft of the penis passes through the vagina to the uterus or cervix -- or vertically –– when the penis rubs up and down against the vulva. T.T. 371-72.

As a general rule, "[o]pinion testimony of an expert witness

---

[10]    Since the Appellate Division did not adjudicate this claim on the merits, this Court will employ a de novo analysis of this issue. See Torres v. Berbary, 340 F.3d at 68.

[11]    Penetration is only one element of the crime of rape. "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person who is less than eleven years old." Penal Law Section 130.35[3]. Under New York law, "[s]exual intercourse has its ordinary meaning and occurs upon any penetration, however slight." P.L. Section 130.00[1].

is admissible where the conclusions to be drawn 'depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence[.]'" <u>People v. Keindl</u>, 68 N.Y.2d 410, 422 (N.Y. 1986). Contrary to Petitioner's contention, Coyne did not testify as to what constitutes rape, nor did he testify as to whether the victim in this case was actually raped or that the alleged acts performed on the victim fulfilled the statutory elements of rape. Rather, Coyne's testimony provided clarification on the issue of penetration, a matter which was well within the scope of his specialized knowledge[12] and outside the scope of the average juror's knowledge. Coyne's opinion, in conjunction with the victim's testimony, permitted the jury to determine what, if any, sexual acts were performed on the victim and whether such acts fell within the "ordinary meaning" of "sexual intercourse", as defined by P.L. § 130.00[1]. Thus, this Court finds that trial counsel's failure to object did not render his assistance constitutionally ineffective, nor did it prejudice his defense.

Petitioner also contends, in a related claim, that counsel should have objected to Coyne's testimony because Coyne read from the victim's medical records, which were not in evidence. This

_____

[12]     Coyne testified that he was a physician, board certified in pediatrics, the Medical Director of the Child Advocacy Center, and that he personally examined children who had been physically and sexually abused since 1991/1990. T.T. 352, 354.  He also indicated that he was  frequently called as an expert on sexual assault (more frequently to testify for the prosecution) in these types of proceedings.  T.T. 368-89.

Court cannot find that trial counsel's failure to object in this instance was not reasonable given that the information the expert read into the record, overall, was favorable to Petitioner.[13]  It helped support the defense's theory that the victim was lying about being raped and sodomized.

Accordingly, this aspect of his ineffective assistance of counsel claim must be denied.

### C. Prevented petitioner from testifying

Petitioner alleges his trial counsel prevented him from testifying at trial.  More specifically, he argues that he would have refuted the victim's allegations had he testified. Pet. ¶22A, Ex. A.  Petitioner raised this claim in his C.P.L. §440.10 motion and it was denied pursuant to C.P.L. § 440.10(2)(b) because his appeal was pending.  Petitioner, however, failed to raise the issue on direct appeal.  Therefore, the claim is deemed exhausted but procedurally barred because he could have raised it on direct appeal, but did not.  See Grey, 933 F.2d at 120-21; C.P.L. § 440.10(2)(c).  Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural bar.  See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977);  see also Sawyer v. Whitley, 505 U.S.

---

[13]    This information is as follows: that the physical examination of the victim was normal; that the victim suffered no trauma to her vagina and anus; and that the victim had reported multiple events of vaginal and rectal penetration.  T.T. 356, 375-76.

333 (1992).  In any event, the claim is without merit[14].

"A 'barebones assertion' that [Petitioner's] attorney told him not to testify in his own defense . . . has been held to be insufficient to justify a hearing or other action on a petitioner's claim that his right to testify in his own defense was denied him." Hammouda v. United States, No. 02-CV-3103, 2006 U.S. Dist. LEXIS 18664 at *5 (Apr. 10, 2006) (quoting Scire v. United States, No. 96-CV-2446, 1997 U.S. Dist. LEXIS 22284 *11 (E.D.N.Y. Mar. 24, 1997) (citing Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991);  Acevedo v. Demskie, No. 96 CV 3141, 1999 U.S. Dist. LEXIS 22072 at *2 (E.D.N.Y. May 11, 1999);  Millian v. United States, No. CV 95-3486, 1997 U.S. Dist. LEXIS 19950 (E.D.N.Y. Nov. 18, 1997).

This Court finds nothing in the record to substantiate Petitioner's claim that his trial counsel prevented him from testifying at trial.  Even assuming, *arguendo*, that Petitioner was not advised of his right to testify, or that trial counsel in some way prevented him from doing so, Petitioner has offered no evidence to  demonstrate that his failure to testify prejudiced his defense. See Brown v. Artuz, 124 F.3d 73, 79-81 (defendant claiming ineffective assistance due to counsel's failure to advise about personal right to testify must still establish prejudice under second prong of Strickland).  Petitioner indicates that he would

---

[14]    Since the Appellate Division did not adjudicate this claim on the merits, this Court will employ a de novo analysis of this issue.  See Torres v. Berbary, 340 F.3d at 68.

have refuted the victim's allegations had he testified; however, he fails to identify how this testimony would have assisted his defense. That is, Petitioner identifies no specific evidence that is different than or additional to what had already been presented to the jury[15]. Thus, it is not possible for this Court to determine how trial counsel's failure to call Petitioner to testify prejudiced his defense. This is fatal to his claim.

Therefore, Petitioner's ineffective assistance counsel of claim must be denied.

## 2. Prosecutorial Misconduct

Petitioner alleges that he was denied a fair trial because the prosecutor knowingly adduced false testimony from the victim that she was raped. Pet. ¶22C, Ex. B. Petitioner raised this claim in his C.P.L. § 440.10 motion, and it was denied by the Erie County Supreme Court pursuant to C.P.L. § 440.10(2)(b) because the appeal was pending. Mem. and Ord. 06/28/01. Petitioner, however, failed to raise the claim on direct appeal. Consequently, the claim is deemed exhausted but procedurally barred because he could have raised the issue on appeal, but did not. See Grey, 933 F.2d at 120-21; C.P.L. § 440.10(2)(c). Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural default. See

---

[15] The medical records showed no physical trauma to the victim's genitals. T.T. 356-376. Furthermore, Petitioner's statements that he was in the bedroom taking pictures of the victim, and that he was in the area to sell a gun were presented at trial. T.T. 112, 115-16.

Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).  In any event, his claim is without merit[16].

"[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)).  A court must review allegations of prosecutorial misconduct "in the context of the entire trial." Miranda, 322 F.3d at 180.  However, "[t]he appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Prosecutorial misconduct warrants a reversal only when the effect is "so prejudicial that [it] render[s] the trial in question fundamentally unfair." Id. (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)).

Here, Petitioner argues that the prosecutor knew that the physical examination of the victim contradicted the victim's testimony, yet allowed the victim to testify that she was raped. This Court finds Petitioner's allegation is not supported by the

---

[16]     Since the Appellate Division did not adjudicate this claim on the merits, this Court will employ a de novo analysis of this issue.  See Torres v. Berbary, 340 F.3d at 68.

trial record.  There is no indication that the prosecutor induced the victim to lie or introduced false testimony.  On direct examination, the victim recalled the events of August 28, 1998, as she remembered them.  T.T. 171-85.  In the course of doing so, she indicated that Petitioner put his penis in both her vagina and anus on that day.  T.T. 179-80.  The prosecutor clarified what the victim meant by "put", and she indicated that Petitioner inserted his penis inside of her (as opposed to touching his penis to the outside of her genitals).  T.T. 180.  Petitioner asserts that this testimony is fundamentally "inconsistent"[17] with the results of the medical examination performed on the victim, and, therefore, the prosecution engaged in misconduct in continuing to pursue the rape charges against Petitioner.  This Court rejects Petitioner's contention, and finds that such an "inconsistency" does not conclusively show, or even suggest, that the victim was induced by the prosecution to lie about being raped.  Instead, the record reflects that the jury, after hearing all of the evidence presented by both the defense and the prosecution and weighing it accordingly, determined that the victim's account of the events was credible and that the act perpetrated against her constituted rape.

In a related argument, Petitioner contends that the prosecution failed to submit the alleged "exculpatory" medical

---

[17]     The victim's testimony and the medical records were "inconsistent" to the extent that the examination showed no physical trauma to the victim's vagina or anus, and no traces of semen in either canal.

examination records into evidence.  This Court notes that although
the prosecution has the obligation to disclose to the defense
exculpatory, material evidence, that duty has never been extended
to requiring the prosecution to affirmatively try to prove the
defendant's innocence.  See Brady v. Maryland, 373 U.S. 83, 87
(1963) ("the suppression by the prosecution of evidence favorable
to an accused upon request violates due process where the evidence
is material either to guilt or to punishment, irrespective of the
good faith or bad faith of the prosecution.")  Thus, under these
circumstances, this Court cannot find that the prosecution engaged
in misconduct.  This aspect of Petitioner's claim, therefore, must
be denied.

Petitioner also alleges that the prosecutor presented
misleading testimony from an expert witness on the question of what
type of sexual contact constitutes rape.  As discussed under
Section "1" above, the issue is procedurally barred from habeas
review and, in any event, without merit.  Accordingly, Petitioner's
prosecutorial misconduct claim must be denied.

### 3. Insufficiency of the evidence

Petitioner alleges that the evidence introduced at his trial
was insufficient to support his convictions of rape, sodomy, sexual
abuse, and endangering the welfare of a child.  Pet. ¶22C, Ex. C.
More specifically, Petitioner argues that the prosecution failed to
prove that the victim was less than eleven years old at the time

the crimes were committed.[18]  Pet., Ex. C.  Petitioner raised this claim in the state courts, and the Appellate Division, on direct appeal, determined that there was legally sufficient evidence of the victim's age.

The law concerning sufficiency of the evidence is well-settled: the reviewing court's inquiry is limited to asking whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord, e.g, People v. Contes, 60 N.Y.2d 620, 621 (1983).  This sufficiency of the evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  Herrera v. Collins, 506 U.S. 390, 402 (1993).

A review of the proof submitted in this case establishes that there was sufficient evidence for the jury to find, beyond a reasonable doubt, Petitioner committed the alleged sexual acts and that the victim was less than eleven years old at the time.  The

---

[18]     The age of the victim is an essential element of three of the crimes with which Petitioner was charged.  Section 130.35[3] of the Penal Code states: "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person who is less than eleven years old." Section 130.50[3] of the Penal code states: "A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal conduct with another person who is less than eleven years old." Section 130.65[3] of the Penal Code states: "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact when the other person is less than eleven years old."

prosecution's expert medical witness testified that the victim was born on November 28, 1987, making her ten years old at the time of the incident[19]. The expert obtained this information from the victim's hospital records, which were marked as an exhibit but never received into evidence at trial. T.T. 365. The victim herself also testified that she was twelve years of age at the time of the trial (May 2000). T.T. 172. The date of the incident (August 28, 1998) was approximately two years prior to the trial, making her ten years of age at the time.

This Court finds that proof of the victim's age was legally sufficient to support each of the crimes with which he was charged where the victim's age was an essential element. Accordingly, the Appellate Division's decision was not "contrary to" or an "unreasonable application of" federal law. This claim must be denied.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of

---

[19] At the close of the People's proof, defense counsel moved to dismiss all those counts of the indictment in which the age of the victim was an element of the offense, contending that the prosecution failed to prove the element of age in each count. The trial court denied said motion. T.T. 391.

appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      September 2, 2009
            Rochester, New York